IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
NO. 1:10 CV 266

D-BACK ACQUISITION CO.,

    Plaintiff,

v.

DEFENSHIELD INC.,

    Defendant.

**COMPLAINT**

Plaintiff D-Back Acquisition Co. ("D-Back"), hereby sues Defendant Defenshield, Inc. ("Defenshield"), and alleges:

## NATURE OF THE ACTION

1. This is an action for (a) false patent marking, pursuant to 35 U.S.C. § 292 and (b) one count of tortious interference with contract under North Carolina state common law. As set forth more fully below, Defenshield is currently marketing and selling as "patented" or "patent pending," several varieties of Mobile Defensive Fighting Positions ("MDFP" or the "Accused Products") despite the fact that those MDFP's are not covered by any patent or pending patent owned by Defenshield. Moreover, with full knowledge that its claims were unwarranted, Defenshield filed a frivolous patent infringement lawsuit in the Federal District Court for the Northern District of New York. Defenshield then used that patent infringement lawsuit as a basis to induce the United States government to breach a contract it had with D-Back.

## PARTIES

2. Plaintiff D-Back Acquisition Co. is a corporation organized and existing under the laws of Delaware, with a principal place of business at 159 Yelton Street, Spindale, North Carolina, 28139.

3. Upon information and belief, Defendant Defenshield Inc. is a corporation organized and existing under the laws of New York, and having a principal place of business at 14 Corporate Circle, East Syracuse, New York 13057.

## JURISDICTION AND VENUE

4. This is an action for, <u>inter alia</u>, false patent marking under 35 U.S.C. § 292 and tortious interference with contract under North Carolina state common law.

5. This Court has original subject matter jurisdiction over D-Back's false patent marking claim under and pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and such jurisdiction is exclusive under and pursuant to 28 U.S.C. § 1338(a).

6. This Court has supplemental subject matter jurisdiction over D-Back's tortious interference claims under 28 U.S.C. § 1367 because those claims are so substantially related to D-Back's false patent marking claim that they form the same case or controversy.

7. This Court also has diversity subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00 and D-Back is a corporation of Delaware, with a principal place of business in North Carolina, and (a) Defenshield is a corporation of New York with a principal place of business in New York.

8. Personal jurisdiction Defenshield is proper in this Court because of Defenshield's continuous and systematic contacts with North Carolina, out of which the claims in this action arise.

9. Upon information and belief, Defenshield regularly sells its MDFP's in North Carolina.

10. For example, upon information and belief, in 2007, Defenshield sold and installed MDFP's at a Marine Corps Air Station in North Carolina.

11. Upon information and belief, in 2008, Defenshield sold and installed MDFP's at a separate Marine Corps Air Station in North Carolina.

12. Upon information and belief, in 2009, Defenshield sold and installed MDFP's at a Marine Corps Base in North Carolina.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), because: (i) Defenshield's products that are the subject matter of this Complaint are offered for sale and/or sold in this District; (ii) a substantial part of the events or omissions giving rise to the causes of action in this Complaint occurred in this District; and (iii) Defenshield is subject to personal jurisdiction in this District, as described above.

## FACTS COMMON TO ALL COUNTS

14. Portable ballistic barriers similar to Defenshield's MDFP have existed and been in use by military and law enforcement for many years.

15. For example, in 1991, American Body Armor & Equipment, Inc. advertised its "Portable Ballistic Barrier Shield", a version of a ballistic barrier featuring a base section and a second and third section that could be stacked on the base section. (See attached Exhibit A). The ballistic barrier was equipped with four fully rotational casters for ease of movement.

16. Defenshield filed a patent application in the United States Patent and Trademark Office ("USPTO") on its "Bullet Resistant Barrier" on September 14, 2002, Serial No. 10/243,508 (the "'508 Application").

17. An important feature of the '508 Application was the limitation that the third and fourth casters of the alleged invention be interconnected to and pivotally movable with respect to the base unit, whereby the third and fourth casters are movable into and out of engagement with the ground.

18. During the prosecution of the '508 Application, Defenshield argued to the USPTO that its "Bullet Resistant Barrier" was novel and patentable over the prior art because, the prior art "did not teach or suggest the use of casters pivotally connected to the frame." (See attached Exhibit B at 6).

19. Moreover, during the prosecution of the '508 Application, Defenshield argued to the USPTO that, unlike Defenshield's alleged invention which featured casters that were pivotally attached to the front wall in order to be movable into or out of engagement with the ground, the prior art featured casters that were fixed to the frame of the ballistic barrier. (See attached Exhibit B at 6).

20. In reliance on Defenshield's representations, on June 21, 2005, the '508 Application issued as U.S. Patent No. 6,907,811 (the "'811 Patent", attached hereto as Exhibit C).

21. All of the patent claims of the '811 Patent recite the necessary limitation that the "third and fourth casters [be] interconnected to and pivotally movable with respect to said base unit, whereby said third and fourth casters are movable into and out of engagement with the ground." (See Exhibit C, 2:53 - 4:3).

**Count I: False Patent Marking**

22. D-Back repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23. Defenshield indicates on its marketing materials that "All Defenshield products are patented and patent-pending." (See attached Exhibit D).

4

24. Indeed, in a Complaint recently filed against D-Back in the Northern District of New York, Defenshield plainly admitted that "Defenshield has taken reasonable measures to mark its products falling within the scope of the claims of the '811 patent, *including the MDFP*, in accordance with 35 U.S.C. § 287." (emphasis added). (See attached Exhibit E at ¶ 8).

25. The patent claims of the '811 Patent cover only ballistic barriers that feature third and fourth casters interconnected to and pivotally movable with respect to the base unit, whereby said third and fourth casters are movable into and out of engagement with the ground.

26. As the photographs attached as Exhibit F show, Defenshield's Accused Products do not feature third and fourth casters interconnected to and pivotally movable with respect to the base unit, whereby said third and fourth casters are movable into and out of engagement with the ground. Instead, the picture shows two casters fixed relative to the frame.

27. The Accused Products are not covered by any patent claim of the '811 Patent.

28. Defenshield knew that the claims of the '811 Patent do not cover the Accused Products.

29. Defenshield falsely marked the Accused Products with the '811 Patent despite the fact that the scope of the claims of the '811 Patent do not cover the Accused Products.

30. Defenshield intended to deceive the public by marking (or causing to be marked) the Accused Products with the '811 Patent.

31. Defenshield knew or reasonably should have known that marking the Accused Products with the '811 Patent violated Federal patent marking laws which authorize marking only existing and enforceable patent or patent pending claims on a "patented" article.

32. Upon information and belief, Defenshield has sold more than 1,200 MDFP's since it began falsely marking its MDFP's.

33. Defenshield's actions are in violation of 35 U.S.C. § 292, which states that "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public; or Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public -- Shall be fined not more than $500 for every such offense."

**Count II: Tortious Interference with Contract**

34. Plaintiff repeats and realleges paragraphs 1 through 33 as though fully set forth herein.

35. At the same time Defenshield has been falsely marking its MDFP products, it has been using the untrue assertion that its products are patented to stifle marketplace competition and tortiously interfere with third-party contracts or prospective contracts.

36. On September 9, 2010, the United States Department of the Army issued a Request for Quote for "Armor Piercing Resistant Mobile Fighting Positions", namely, Request for Quote Identification Number RFQ511993.

37. Upon information and belief, bids for RFQ511993 were submitted by a company known as First Choice Armor & Equipment ("First Choice"), and by Defenshield.

38. On September 15, 2010, the Department of the Army selected First Choice as the vendor for RFQ511993.

39. On September 20, 2010, First Choice signed the contract with the Department of the Army on RFQ511993 (the "Fort Drum Contract").

40. On September 22, 2010, Defenshield responded to First Choice's success on the Fort Drum Contract by filing a patent infringement lawsuit against First Choice alleging infringement of the '811 Patent. This lawsuit was filed in the Federal District Court for the Northern District of New York as docket number 5:10-cv-01140 (the "Defenshield Complaint", attached hereto as Exh. E).

41. On September 22, 2010, D-Back purchased certain assets of First Choice, including among other things the allegedly infringing rolling bunkers, with the intent that D-Back would assume responsibility for First Choice's government contracts. Indeed, at the present time, D-Back is currently performing other similar contracts entered into between First Choice and the United States government.

42. On September 29, 2010, Defenshield amended the Defenshield Complaint to identify D-Back as a defendant and accuse D-Back of patent infringement of the '811 Patent.

43. Despite Defenshield's knowledge that First Choice's rolling bunker does not contain key elements of the claims of the '811 Patent, such as the pivotally attached third and fourth casters, Defenshield alleged that First Choice's rolling bunker infringed the 811 Patent.

44. Despite Defenshield's knowledge that under 28 U.S.C. § 1498 it had no cause of action for patent infringement against First Choice based on sales of products to the government, Defenshield based its claim for patent infringement in part on First Choice's alleged sales of rolling bunkers to the United States government.

45. Despite Defenshield's knowledge that under 28 U.S.C. § 1498 it had no right to an injunction to prevent First Choice's sales of allegedly infringing rolling bunkers to the government, the Defenshield Complaint included a request for such injunctive relief against First Choice.

46. Having filed a Complaint that contained claims not warranted by existing law, Defenshield contacted the Department of the Army in protest of the award of the Fort Drum Contract to First Choice.

47. Upon information and belief, despite knowledge that its patent does not cover First Choice's rolling bunkers, Defenshield argued to the Department of the Army that First Choice should not have been awarded the Fort Drum Contract over Defenshield because "First Choice's product plainly infringes Defenshield patents".

48. Based in whole or in part on Defenshield's contact with the Department of the Army, on October 6, 2010, the Department of the Army suspended its Fort Drum Contract with First Choice.

49. First Choice had a valid contract with the Department of the Army to provide rolling bunkers.

50. Defenshield was aware of this contract between First Choice and the Department of the Army to provide rolling bunkers.

51. Defenshield intentionally induced the Department of the Army not to perform the contract.

52. Defenshield acted without justification in inducing the Department of the Army to not perform the contract.

53. As a result of the purchase of assets of First Choice, D-Back has already begun performing First Choice's obligations under other similar contracts with the government.

54. But for Defenshield's tortious interference that resulted in the suspension of the Fort Drum Contract, D-Back would have been performing the contract with the Department of the Army.

55. As a result of Defenshield's actions, D-Back has suffered damages in an amount to be determined at trial in that, among other things, it will not be able to fulfill, and be compensated for, the contract with the Department of the Army.

56. Defenshield's actions were not motivated by a legitimate business purposes, but were instead maliciously calculated to procure the breach of a contract.

57. Defenshield's actions constitute tortious interference with contract under North Carolina law.

58. Defenshield's actions were malicious, willful and/or wanton, thereby entitling D-Back to an award of punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff D-Back Acquisition Co. demands judgment be entered against Defendant Defenshield as follows:

(A) For judgment against Defenshield and in favor of D-Back for the violations alleged in this Complaint;

(B) For an injunction prohibiting Defenshield, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from violating 35 U.S.C. § 292;

(C) For an Order requiring Defenshield to pay a civil monetary fine of up to $500 per false marking offense, one-half of which shall be paid to the United States and one-half of which shall be paid to D-Back. Based on Defenshield's alleged sales of over 1,200 MDFP's, D-Back seeks a fine from Defenshield of not less than $600,000;

(D) For an award to D-Back of its damages suffered as a result of Defenshield's tortious conduct;

(E) For an award to D-Back of punitive damages as a result of Defenshield's malicious, willful and/or wanton conduct;

(F) For an Order requiring Defenshield to pay D-Back's costs; and

(G) For an award to Plaintiff of such other and further relief as this Court deems to be reasonable, necessary and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

This 10th day of November, 2010.

                                                                 s/ Charles E. Johnson
                                                                 Charles E. Johnson
                                                                 N.C. State Bar No. 9890

                                                                 ROBINSON, BRADSHAW & HINSON, P.A.
                                                                 101 North Tryon Street, Suite 1900
                                                                 Charlotte, North Carolina 28246-1900
                                                                 Telephone: (704) 377-8354
                                                                 Facsimile: (704) 373-3954
                                                                cejohnson@rbh.com

OF COUNSEL:

Barry Schindler
William W. Stroever
Greenberg Traurig
200 Park Avenue
Florham Park, NJ 07932-0677
Telephone: (973) 443-3524
Facsimile: (973) 295-1291
schinderlb@gtlaw.com
stroeverw@gtlaw.com

                                                          *Attorneys for Plaintiff*